USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/5/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

ADEDAYO ILORI,

Defendant.

21-cr-00746 (MKV)

OPINION AND ORDER
ON MOTION IN LIMINE

MARY KAY VYSKOCIL, United States District Judge:

      Defendant Adedayo Ilori was charged in a six-count Indictment with committing, *inter alia*, major fraud against the United States and aggravated identity theft. Mr. Ilori was arraigned on this Indictment in December 2021 and a trial in this matter is scheduled to begin on July 13, 2022. On June 15, 2022, the government moved the Court for rulings *in limine* on certain evidentiary issues in advance of the trial.[1]

      Subsequent to the filing of its motion, the government filed a Superseding Indictment in this case, which charges Mr. Ilori with the same six counts that were charged in the original Indictment. However, the Superseding Indictment includes allegations triggering the statutory enhancement under 18 U.S.C. § 3147, which applies where individuals commit federal offenses while on federal bail, and clarifies the alleged unlawful activities involved in the money laundering conspiracy charged in Count Six. Moreover, Chris Recamier, who was named in the original Indictment as a co-defendant, is not charged in the Superseding Indictment as he pleaded guilty on June 15, 2022 to one count of the six-count Indictment. Mr. Ilori will be arraigned on the Superseding Indictment prior to the scheduled final pretrial conference on July 6, 2022.

---

[1] In support of its motion, the Government filed a memorandum of law. (Gov't Br. [ECF No. 42]). In opposition to the government's motion, Defendant filed an Affirmation in Opposition. (Def. Aff. [ECF No. 46]).

## BACKGROUND

Mr. Ilori is charged in a six-count Superseding Indictment with (1) major fraud against the United States, in violation of 18 U.S.C. § 1031 (Count One); (2) conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349 (Count Two); (3) wire fraud, in violation of 18 U.S.C. § 1343 (Count Three); (4) bank fraud, in violation of 18 U.S.C. § 1344 (Count Four); (5) aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Five); and (6) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Six). Specifically, the Superseding Indictment alleges that from in or about August 2020 until his arrest in October 2021, Mr. Ilori, who at that time was on pretrial release in connection with another fraud and identity theft case in this district,[2] was involved in a scheme to utilize stolen identities to, *inter alia*, fraudulently claim millions of dollars in Covid-19 relief loans through the federal Paycheck Protection Program (the "PPP") and the Economic Injury Disaster Loan ("EIDL") Program, programs administered by the United States Small Business Administration ("SBA"). (Superseding Indictment [ECF No. 44] ¶ 1; Complaint [ECF No. 1] ¶ 11). The Government alleges that, during the course of this scheme, the Defendant made multiple loan applications using the stolen identities of multiple identity theft victims. (Superseding Indictment ¶¶ 1, 4, 14; Complaint ¶ 11). Many of these applications were submitted in the name of two particular victims (hereinafter referred to as "Identity Theft Victim-1" and "Identity Theft Victim-2").

---

[2] In March 2020, prior to the allegations at issue here, Mr. Ilori had been arrested and charged in the Southern District of New York with, *inter alia*, fraud, identity theft, and money laundering. *See United States v. Chancy*, No. 20-CR-378 (LJL) (S.D.N.Y.). That case was assigned to the Honorable Lewis J. Liman. After his arrest on those charges, Mr. Ilori was released on bail. Thereafter, on April 8, 2021, Mr. Ilori pleaded guilty to count one of the Indictment charging conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. At the change of plea hearing, Mr. Ilori's sentencing was scheduled for October 13, 2022. All of the conduct charged in this case was committed while Mr. Ilori was on supervised release and much of it after he had pleaded guilty and was awaiting sentencing in the *Chancy* case. Mr. Ilori was detained for violations of the conditions of his release in the *Chancy* case based on the charges in this indictment and sentencing in that case was adjourned by Judge Liman to a later date. Mr. Ilori was subsequently sentenced to 63 months' imprisonment based on the charges in that case.

2

(Complaint ¶¶ 11, 17(a)(iii), 18(a)(iii), 21(a)(ii), 22(a)(iii)).  It is alleged that the representations on these applications were all false.  The Government maintains that the Defendant utilized the fraudulently obtained proceeds for his own benefit, including for cryptocurrency investments, securities, cash withdrawals, and personal expenses.  (Complaint ¶¶ 12, 24).

## LEGAL STANDARD

The purpose of a motion *in limine* is to enable the trial court to rule on specific evidence in advance of the trial.  *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  Evidence challenged in a motion *in limine* "should only be precluded when it is clearly inadmissible on all possible grounds."  *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (quotation omitted).  Moreover, "a court's decision on the admissibility of evidence on a motion *in limine* may be subject to change when the case unfolds . . . because the actual evidence changes from that proffered by the movant."  *Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 479 (S.D.N.Y. 2016) (quotation omitted).

## DISCUSSION

The Government seeks rulings *in limine* on certain evidentiary issues.  First, the Government seeks a ruling that, under Rule 801(d)(2)(E) of the Federal Rules of Evidence, out of court statements made by certain purported co-conspirators of Mr. Ilori are admissible.  Second, The Government seeks a ruling that evidence of alleged contemporaneous fraud and identity theft conduct is admissible as either direct evidence of the charged offenses or, alternatively, under Rule 404(b).  Third, the Government seeks a ruling that evidence of the Defendant's criminal history is admissible either under Rule 404(b) to show knowledge or intent or, alternatively, for impeachment purposes should the Defendant testify.  Last, the Government

moves to preclude the Defendant from making any argument or presenting any evidence concerning the possible consequences of conviction. (Def. Br. at 1).

### I. Co-Conspirator Statements

The Government moves *in limine* for blanket permission to admit out of court statements made by certain purported co-conspirators of Mr. Ilori, specifically co-defendant Mr. Recamier and an unnamed co-conspirator ("CC-1"). (Def. Br. at 5). Many such statements likely will be admissible at trial because they are "not hearsay" under Rule 801(d)(2) of the Federal Rules of Evidence, and there is no other reason to keep the statement from the jury. However, with respect to any particular out of court statement the government seeks to introduce during the course of the trial, the defense remains free to object that the statement does not meet the conditions for the relevant hearsay exclusion, should be precluded based on another evidentiary rule, or violates the Defendant's constitutional rights. The Court cannot make blanket rulings in advance of hearing the proffered evidence and any objection or knowing the context in which the statement is offered.

In general, hearsay is an out of court statement offered for the truth of the matter asserted, and such a statement is not admissible at trial unless it falls into an exclusion or exception to the hearsay rule. Fed. R. Evid. 801(c), 802. However, the Rules provide that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement pursuant to this rule, a district court must find by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course and in furtherance of that conspiracy. *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).

Although only co-conspirator statements made "in furtherance" of the conspiracy are admissible under Rule 801(d)(2)(E), the standard for what qualifies as a statement "in furtherance" of a conspiracy is not very restrictive. The requirement that the challenged statement be "in furtherance of" the conspiracy is satisfied if the statement's objective is "designed to promote or facilitate achievement of the goals of the conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994); *see also United States v. Graham*, 477 F. App'x 818, 822 (2d Cir. 2012). "[S]tatements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990) (internal citations and alterations omitted); *see also United States v. Plaza*, 826 F. App'x 60, 64 (2d Cir. 2020).

The government explains that it expects to offer various communications between Mr. Ilori and Mr. Recamier and Mr. Ilori and CC-1. (Gov't Br. at 6–7). As an example, the government proffers that it will produce communications made over a Telegram app "to exchange stolen identities, to advance the creation of counterfeit IDs and bank cards, and to further the fraud scheme." (Gov't Br. at 6). Mr. Ilori contends that the government will be unable to satisfy the elements of the co-conspirator hearsay exception with respect to messages received on a Samsung phone found in the passenger compartment of the car within which Mr. Ilori was arrested. Mr. Ilori contends that the communications on the Samsung phone should not be admitted because (1) the government's proffered evidence is insufficient to establish that Mr. Ilori owned the Samsung phone, and (2) that it is speculative that the conversations on the

5

Telegram App on the Samsung phone were between Mr. Ilori and CC-1, and Mr. Ilori and Mr. Recamier.  (Def. Aff. at 2–4).

These statements may well be admissible as statements of co-conspirators.  But the Defendant is free to object that any particular statement does not meet the tests described above, and the Court cannot rule until it has the information necessary to do so.  *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  Accordingly, the Court will reserve decision on the admission of potential co-conspirator statements until trial.  The motion is therefore denied without prejudice.

## II.     Uncharged Instances Of Identity Theft And Fraud

The Government moves *in limine* with respect to the admissibility of evidence concerning Mr. Ilori's other contemporaneous fraud and identity theft conduct at the time he is alleged to have committed the crimes charged in this case, as well as evidence that he benefited from contemporaneous fraud and identity theft conduct committed by Mr. Recamier.  (Gov't Br. at 9). Specifically, the Government seeks a ruling on the admissibility of evidence with respect to four categories of contemporaneous conduct.  First, the Government seeks a ruling with respect to evidence that Mr. Recamier rented an apartment in Long Island City under the name of Identity Theft Victim-2 and that Mr. Ilori frequently used this apartment, including at times to access investment accounts in the name of Identity Theft Victim-1.  Second, the Government seeks a ruling with respect to evidence that Mr. Ilori used a bank card in the name of Identity Theft Victim-1 to purchase items at a Manhattan coffeeshop.  Third, the Government seeks a ruling with respect to evidence that Mr. Ilori rented an apartment in Brooklyn under the name of a third identity theft victim ("Identity Theft Victim-3"), whose identity Mr. Ilori also used to apply for a COVID-19 relief loan.  And fourth, the Government seeks a ruling with respect to

evidence that Mr. Recamier leased a 2021 Mercedes Benz S580 under the name of another identity theft victim ("Identity Theft Victim-4"), which Mr. Ilori was observed driving later when he was arrested and from which items were seized at the time of his arrest.[3]

The government proffers that this uncharged conduct involves the use by Messrs. Ilori and Recamier of identities, entities, accounts, or documents that, according to the government, they also utilized in the charged crimes.  Moreover, the Government also proffers that these four instances of fraud involve either the use of funds that are directly traceable to fraudulently obtained funds, or the use of cash payments at the same time that Messrs. Ilori and Recamier withdrew large amounts of cash proceeds of the charged scheme.

This evidence may well be admissible.  Under the Federal Rules of Evidence, uncharged criminal conduct or other bad acts can be admissible either as direct evidence or pursuant to Rule 404(b).  Evidence of uncharged criminal conduct or other bad acts can be admitted as direct evidence if the conduct or act "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  Thus, a "trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (quotations omitted); *see also United States v. Blanco*, 811 F. App'x 696, 704 (2d Cir. 2020).  This admissible background evidence includes, for example, "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* (quotations omitted).

---

[3] The Court previously denied Mr. Ilori's Motion to Suppress items seized from that vehicle. [ECF No. 39].

Moreover, when "a conspiracy is charged, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (quotations omitted).

The evidence may also be admissible under Rule 404(b). Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act" is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "The Second Circuit's inclusionary rule allows the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (quotations omitted). In addition, "upon request, the district court must give an appropriate limiting instruction to the jury." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992). "Even under th[e] [inclusionary] approach, however, district courts should not presume that [other act] evidence is relevant or admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). Rather, such evidence "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

At bottom, all evidence of "intrinsic act[s] offered as direct proof of the crime charged will, by definition, satisfy Rule 404(b)." *United States v. Shin*, No. 19 CR. 552 (JPC), 2022 WL 153184, at *4 (S.D.N.Y. Jan. 15, 2022) (quoting *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004)). The only practical benefit of admitting evidence as intrinsic, as opposed

8

to under Rule 404(b), is that the Government escapes Rule 404(b)'s notice requirement and the Court need not give a limiting instruction cautioning the jury against making an improper inference of criminal propensity. *Id.* Accordingly, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019).

Regardless, whether uncharged conduct constitutes direct evidence or "other crimes" evidence under Rule 404(b), the uncharged conduct must survive scrutiny under the Rule 403 balancing test to be admissible. Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice." Fed. R. Evid. 403. However, the Second Circuit has declined to find probative evidence which is properly used at trial unduly prejudicial under Rule 403 where it "did not involve conduct more inflammatory than the charged crime." *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *see also Pitre*, 960 F.2d at 1120 (finding no error with regard to Rule 403 where the evidence of prior crimes "did not involve conduct any more sensational or disturbing than the crimes with which [the defendants] were charged" (citation omitted)).

Mr. Ilori, for his part, challenges the admissibility of evidence of this uncharged conduct, contending that the proffered evidence does not establish that Mr. Ilori had the requisite knowledge that he was committing any fraud. (Def. Aff. at 4–5). Specifically, Mr. Ilori contends that there is insufficient evidence to support that Mr. Ilori had knowledge that the Mercedes was leased fraudulently or that the bank card he used was in the name of an identity theft victim. (Def. Aff. at 4–5). He also contends that certain bank statements purportedly submitted by Mr. Ilori in the name of Identity Theft Victim-3 in an application for the Brooklyn apartment,

9

actually belonged to Mr. Recamier. (Def. Aff. at 5). Mr. Ilori will have the opportunity to make these arguments at trial.

The Court cannot resolve these disputed issues in advance of trial. The Court must see the context in which this evidence is offered and the purpose for which it is offered. Accordingly, the Court denies the *in limine* motion without prejudice and reserves decision on the admission of this conduct evidence until trial.

### III. Prior History Of Identity Theft And Fraud

The Government moves *in limine* with respect to the admissibility of evidence concerning Mr. Ilori's prior convictions for fraud and identity theft, either pursuant to Rule 404(b) or for impeachment purposes. (Gov't Br. at 14, 18). Specifically, the government seeks a ruling with respect to evidence of seven prior convictions and one prior arrest, all for conduct involving fraud and identity theft. (Gov't Br. at 14–16). Most recently, Mr. Ilori took part in a fraud and identity theft scheme between in or about March 2019 and in or about March 2020, of which co-defendant Mr. Recamier also was a part, that resulted in Mr. Ilori's 2021 conviction in the Southern District of New York in case 20 Cr. 378 (LJL). This offense involved the submission of fraudulent business loan applications utilizing the stolen identities of identity theft victims and false claims of association with corporate entities, as well as the submission of falsified bank and tax documents. In addition to that most recent conviction, Mr. Ilori has been arrested and/or convicted on six previous occasions over the past three decades, each time for

attempting to open bank accounts or purchasing goods using counterfeit ID cards or bank cards in the names of identity theft victims.

      A. *Rule 404(b)*

The Government contends that Mr. Ilori's prior identity theft and fraud conduct and convictions should be admitted under Rule 404(b) to show that Ilori had the requisite knowledge or intent to commit the charged crimes, or to rebut any assertion that he was not the person who committed the crimes. (Def. Br. at 16). Specifically, the Government argues that the method and means of the conduct underlying Mr. Ilori's prior convictions—forging documents, submitting fraudulent applications, falsely claiming association with corporate entities, obtaining stolen identify information from victims, and possessing and using false ID cards and credit cards in victims' names—provides a reasonable basis for inferring that Mr. Ilori had knowledge or intent to commit the charged crimes. (Def. Br. at 17).[4]

As previously noted, Rule 404(b)(1) precludes the admission of evidence of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit has instructed that "evidence of prior convictions merits particularly searching, conscientious scrutiny" when determining whether the "probative value of the prior crimes is substantially outweighed by the danger of unfair prejudice." *United States v.*

---

[4] The Superseding Indictment filed on June 22, 2022 includes allegations triggering the statutory enhancement under 18 U.S.C. § 3147, which applies where individuals commit federal offenses while on federal bail. (*See* Superseding Indictment). Accordingly, to the extent that the Defendant's bail status is an element of 18 U.S.C. § 3147, the jury would only need to know that the Defendant had been charged and arrested for the conduct in the *Chancy* case, but his conviction in that case would not be necessary to establish the elements of the enhancement under 18 U.S.C. § 3147.

11

*McCallum*, 584 F.3d 471, 476 (2d Cir. 2009). This is so because such evidence "easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence." *Id.* Nonetheless, a "court can . . . admit evidence of prior acts as probative of knowledge and intent if the evidence is relevant to the charged offense, *i.e.*, if there is a similarity or connection between the charged and uncharged acts." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).

The law is clear that where a defendant claims that he lacked the knowledge or intent to commit the charged offense, the Government is permitted to introduce evidence of the defendant's other convictions for similar conduct. *See*, *e.g.*, *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) ("Where intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent."); *United States v. Arango-Correa*, 851 F.2d 54, 60 (2d Cir. 1988) (concluding that evidence of defendant's general knowledge of narcotics transactions admissible where knowledge was at issue); *United States v. Alcantara*, 674 F. App'x 27, 30 (2d Cir. 2016) (evidence of prior conviction properly offered to prove knowledge and intent with respect to tax fraud and identity theft). A defendant's knowledge and intent are at issue unless these elements of the crime have been conceded. *See*, *e.g.*, *United States v. Colon*, 880 F.2d 650, 656–57 (2d Cir. 1989) ("If a defendant does not wish to enter into a formal stipulation, he or she must at least 'express a decision' to restrict the defense case so as not to raise the issue of intent, and to accept a jury instruction that would keep that issue out of the case") (internal citation omitted)); *see also United States v. Jones*, 858 F. App'x 420, 422 (2d Cir. 2021). To take knowledge or intent out of a case, "a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed." *Pitre*, 960 F.2d at 1119 (quoting *Colon*, 880 F.2d at 659). "A defendant may do so either 'by putting forward a particular

theory of defense or by specifically offering to stipulate.'" *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 168 (S.D.N.Y. 2006) (quoting *Colon*, 880 F.2d at 657).

Knowledge and intent are also put at issue when a defendant argues that he or she was present during the commission of an offense, but not involved in any illegal activity. *See*, *e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1183 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged")); *United States v. Ahmed*, 67 F. App'x 648, 650 (2d Cir. 2003) (admitting evidence of a prior conviction to undermine a defendant's claim of ignorance). However, when a defendant argues that he did not commit the charged act at all, intent is not at issue. *See Colon*, 880 F.2d at 657 ("Our cases have thus recognized a distinction between defense theories that claim that the defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly, with only the latter truly raising a disputed issue of intent.").

Courts within the Second Circuit have frequently allowed the admission of "other act" evidence pursuant to Rule 404(b) to prove knowledge and intent when such other acts are similar to the crime with which a defendant stands charged, particularly in the context of crimes of fraud. *See*, *e.g.*, *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (upholding decision to admit evidence of a prior conviction for counterfeiting in order to rebut claim that defendant was unaware of receipt of counterfeit money); *United States v. Myerson*, 18 F.3d 153, 166-67 (2d Cir. 1994) (upholding admission of prior instances of fraudulent diversion of client funds and tax evasion to prove requisite intent for each of these crimes at trial); *United States v. Moreno*, 10CR0564-LTS, 2011 WL 1642274 (S.D.N.Y. Apr. 25, 2011) (granting *in limine* motion to admit evidence of prior identity theft conviction to demonstrate knowledge and intent in access device

fraud and aggravated identity theft case). Lastly, the Circuit has held that in a conspiracy case such as this one, prior convictions are admissible as "background information to demonstrate the existence of a relationship of mutual trust, or to 'enable the jury to understand how the illegal relationship between the co-conspirators developed.'" *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996)).

Here, knowledge and intent, which are elements of the offenses with which Mr. Ilori has been charged, are at issue in this case. Mr. Ilori has not made any statement to the Court of sufficient clarity to indicate that the issue will not be disputed. (*See* Def. Aff. at 4–6). The acts underlying the crimes for which Mr. Ilori has been convicted in the past are also similar to the crime for which the Defendant stands charged in this case. Each charge involves the forging of documents, submission of fraudulent applications, false claims of association with corporate entities, stolen identities from victims, and possession and use of false ID cards and credit cards in victims' names. Accordingly, these past convictions clearly are probative of knowledge and intent.

With respect to Mr. Ilori's 2021 fraud conviction, the Court finds that the probative value of evidence of this conviction substantially outweighs any danger of unfair prejudice, especially where this prior conduct is not "any more sensational or disturbing than the crimes with which" the Defendant is currently charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). However, in order to limit any potential for unfair prejudice, the evidence of Mr. Ilori's 2007, 2006, 2004, 2000, and 1998 convictions (the "earlier convictions") and his 2019 arrest should be excluded as cumulative. The Court is concerned that, given the significant number of prior convictions, all for substantially similar conduct, and much of it remote in time, allowing the jury to hear this evidence would substantially increase the risk of confusing the issues for the

jury and/or unduly prejudice the Defendant. Moreover, to the extent that the government seeks admission of Mr. Ilori's prior bad acts for purposes of establishing knowledge or intent, Mr. Ilori's 2021 fraud conviction is the most recent in time and most serious of Mr. Ilori's prior fraud convictions.

Accordingly, to the extent that Mr. Ilori places his knowledge and intent at issue in this case, evidence of his 2021 fraud conviction may be admitted. However, evidence of his earlier convictions and his 2019 arrest will be excluded as unduly prejudicial.

### B. Impeachment

The Government also requests that, should Mr. Ilori not place his knowledge and intent at issue in this case, prior bad acts and similar criminal convictions be admitted as impeachment evidence under Rules 608 and 609 if Mr. Ilori testifies in his defense. (Def. Br. at 18).

Under Federal Rule of Evidence 609, evidence of a witness's prior conviction can be admitted for impeachment purposes, subject to certain limitations. Fed. R. Evid. 609. Prior convictions involving crimes of dishonesty or false representation are automatically admissible under Fed. R. Evid. 609(a)(2) as they bear on a witness's propensity to testify truthfully. *See, e.g.*, *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005). In fact, the Court has no discretion to exclude convictions involving false statements because such convictions are inherently more probative than prejudicial as to the witness's capacity for truthfulness. *See, e.g.*, *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1997) ("[E]vidence of conviction of a certain type of crime—one involving 'dishonesty or false statement'—must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendant.").

All of Mr. Ilori's prior convictions were for conduct involving fraud and identity theft. (*See* Gov't at 14–16). All of these crimes involved dishonesty or false statements and thus, are *per se* probative of credibility under Rule 609(a)(2). *See United States v. Chervin*, No. 10 CR 918 RPP, 2013 WL 124270, at *5 (S.D.N.Y. Jan. 10, 2013) (conviction of wire fraud is a crime of dishonesty or false representation); *United States v. Watts*, 934 F. Supp. 2d 451, 490 (E.D.N.Y. 2013) ("Rule 609(a)(2) mandates admission of Dupree's prior convictions for bank fraud, conspiracy to commit bank fraud, and false statements, all offenses involving dishonesty or false statements."); *United States v. Bumagin*, 136 F. Supp. 3d 361, 377 (E.D.N.Y. 2015) ("Defendant's 2002 convictions for conspiracy to possess and pass a counterfeit check and for attempt to pass a fictitious obligation fall under Rule 609(a)(2) because each conviction required Defendant to admit at his guilty plea an intent to defraud."); *Sanders v. Ritz-Carlton Hotel Co.*, LLC, No. 05 CIV. 6385 (PKL), 2008 WL 4155635, at *3 (S.D.N.Y. Sept. 9, 2008) (conviction for tax evasion based upon plaintiff's false statements to the government, constituted a conviction involving dishonesty or false statement as required by Rule 609(a)(2)).[5] Moreover, although Mr. Ilori contends that admission of this evidence is prejudicial, he concedes that this argument is less persuasive should he choose to testify. (Def. Aff. at 6).

Having decided that the Defendant's convictions are false statement crimes, the Court must also address the timeliness of the earlier convictions, all of which occurred more than ten years ago, before they will be admitted under Rule 609. Rule 609(b) bars the use of a conviction more than ten years old to attack a witness's credibility unless the Court determines that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the

---

[5] As this evidence is presumptively admissible under Fed. R. Evid. 609(a)(2), the Court need not consider whether it is also admissible under Rule 608.

intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). The ten-year limitation is measured from the later of the date of conviction or the date of release. Fed. R. Evid. 609(b). The Second Circuit has instructed that, before admitting impeachment evidence under Rule 609(b), the district judge must make an on-the-record finding based on "specific facts and circumstances" that the probative value of the evidence substantially outweighs the danger of unfair prejudice. *United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998). Factors relevant to the Rule 609(b) balancing test include: (i) the impeachment value of the conviction, *see Payton*, 159 F.3d 49, 57–58 (2d Cir. 1998); (ii) "the centrality of the credibility issue," *see id.* at 58; (iii) the length of time since the conviction, *see United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002); and (iv) the similarity of the prior conviction to the alleged crime, *see id.*

The Court finds that the probative value of the Defendant's earlier convictions do not substantially outweigh their potential prejudicial effect. First, none of these convictions have significant probative value because they are all less serious and less recent than Mr. Ilori's 2021 fraud conviction and are all remote in time, having occurred over a decade ago. Any probative value of the earlier convictions would be largely cumulative given that the 2021 conviction can be admitted to impeach the Defendant or with respect to intent or knowledge if put at issue. *See United States v. Crumble*, No. 18-CR-32 (ARR), 2018 WL 2016852, at *7 (E.D.N.Y. May 1, 2018) (finding a twelve year old conviction for possession in the fifth degree to be needlessly cumulative where a more recent drug sale conviction was already admitted for impeachment purposes); *United States v. Washington*, 746 F.2d 104, 107 (2d Cir. 1984) (Newman, J., concurring ) ("Once credibility is impeached by a prior felony conviction, the incremental probative force of a second conviction is minimal.").

Finally, as the government concedes, "[t]he elements of the charged crimes [here] are nearly identical to the elements of Ilori's prior convictions." (Gov't Br. at 17). As Courts in this circuit have repeatedly stated, "similarity of past and present offenses weighs heavily *against* the use of prior criminal convictions for impeachment purposes" because of the danger of unfair prejudice. *See*, *e.g.*, *Bumagin*, 136 F. Supp. 3d at 376 (citation omitted; emphasis in original). Accordingly, should Mr. Ilori testify, his 2021 fraud conviction may be admissible for impeachment purposes under Rule 609(a)(2). Mr. Ilori's remaining earlier convictions will be excluded.

### IV. Evidence Of Consequences Of Conviction

The Government last moves *in limine* to preclude evidence or argument concerning the potential punishment or consequences Defendant faces if convicted. (Def. Br. at 23). The Defendant responds that he has no intention of raising the potential consequences of a possible conviction. (Def. Aff. at 6). This is, of course, a well-established rule and the Government's motion *in limine* is unwarranted and a needless imposition on the Court and the Defendant. Accordingly, the government's motion to preclude evidence or argument concerning the potential punishment or consequences the Defendant faces if convicted is denied without prejudice as moot.

The Clerk of Court respectfully is requested to close docket entry 42.

**SO ORDERED.**

Date:  July 5, 2022
       New York, NY

_____
MARY KAY VYSKOCIL
United States District Judge